UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LEE JONES, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:13CV234 JCH |
| | ) |
| TROY STEELE, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Lee Jones' pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is fully briefed and ready for disposition.

On October 5, 2010, Petitioner pled guilty to one count of Statutory Rape in the First Degree. Petitioner was sentenced on December 2, 2010, to life in prison.[1]  Petitioner did not file a direct appeal of his conviction or sentence. He did file a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 24.035, which was denied without an evidentiary hearing. (Resp. Exh. 1, PP. 87-93). The Missouri Court of Appeals affirmed the denial of Petitioner's post-conviction motion. *Jones v. State*, 387 S.W.3d 423 (Mo. App. 2012).

Petitioner is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri. In the instant petition for writ of habeas corpus, Petitioner raises the following three claims for relief:

(1) That Petitioner received ineffective assistance of counsel, in that trial counsel permitted him to enter a guilty plea that was involuntary, unknowing, and

---

[1] Also on December 2, 2010, Petitioner's probation was revoked in a separate case, and Petitioner was sentenced to five years imprisonment for Burglary in the Second Degree, to run concurrently with his life sentence.

unintelligent, as Petitioner was incompetent at the time of his plea;[2]

(2) That Petitioner received ineffective assistance of counsel, in that trial counsel failed properly to investigate the defense of not guilty by reason of mental disease or defect ("NGRI"), or diminished capacity; and

(3) That Petitioner received ineffective assistance of counsel, in that trial counsel coerced Petitioner into entering an involuntary, unknowing, and unintelligent plea by instilling fear that Petitioner would lose at trial because his taped statement to the police would be introduced to the jury.

(§ 2254 Petition, PP. 5-10). The Court will address the claims in turn.

## DISCUSSION

### I. Ground 1

As stated above, in Ground 1 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel permitted him to enter a guilty plea that was involuntary, unknowing, and unintelligent, as Petitioner was incompetent at the time of his plea. (§ 2254 Petition, PP. 5-7). Petitioner raised this claim before the 24.035 post-conviction motion court, and the court denied the claim as follows:

1. In order to be entitled to post-conviction relief, a Movant[3] is required to show by a preponderance of the evidence that: 1) counsel's performance was deficient to the extent that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment; and 2) counsel's deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687 (1984). Movant bears a heavy burden in attempting to satisfy the first prong of the Strickland test, for he must overcome a strong presumption that counsel provided competent assistance by showing that "counsel's representation fell below an objective standard of reasonableness." Deck v. State, 68 S.W.3d 418, 425-26 (Mo. banc 2002). To satisfy the second prong of the Strickland test, a Movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[2] Petitioner apparently attempts to assert ineffective assistance of both trial and appellate counsel in each of his claims. As noted above, however, Petitioner did not appeal his conviction or sentence.

[3] Petitioner is referred to as "Movant" by the Missouri state courts.

        would have been different." Middleton v. State, 103 S.W.3d 726, 733 (Mo. banc 2003).

2. In his first claim in his Amended Motion, Movant claims his plea was unknowing, unintelligent, and involuntary, because Movant was incompetent at the time of his plea.

3. However, on September 25, 2008, after a thorough and extensive examination, Dr. Jeffrey Kline, a licensed psychologist, concluded that Movant had the capacity to understand the proceedings against him and was able to assist his attorney in his own defense, even though Movant was mildly retarded. He recommended that Movant was fit to proceed to trial for the disposition of the charges pending against him.

4. Additionally, Dr. Richard Scott, a licensed psychologist, performed a thorough examination of Movant and concluded, on March 3, 2010, that Movant understood the nature and purpose of sexual contact and its relation to sexual gratification. Further, Movant reportedly engaged in the behavior when no one else was present that could report. it. He allegedly did so unaware that he had gonorrhea, but shortly thereafter understood how he likely acquired gonorrhea. Movant made clear his understanding of the wrongfulness of his sexual contact with children, using terms such as rape and understanding that police would be seeking him if he were accused of rape. Movant questioned the link between gonorrhea and touching a child with his finger. Finally, he told the examiner that sexual contact with children is wrong and that he has always known this to be so. Although Movant is mentally retarded, functionally illiterate and very limited in many ways, he had demonstrated an understanding of sexual contact, the wrongfulness of sexual contact with children, specific understanding of the allegations against him, and the wrongfulness of the alleged behavior. Therefore, in the opinion of the examiner, to a reasonable degree of psychological certainty, although Movant suffered a mental defect at the time of the alleged offense, he was not, as a result of this mental defect, incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct.

5. A review of the plea and sentencing transcripts also show that Movant's plea was knowing, intelligent, and voluntary. Movant told the Court he was not under the influence of any alcohol or narcotics at the time of his plea. (plea transcript pgs. 4-6 hereinafter referred to as pl. tr.)

6. Movant stated that he had fully discussed his case with his attorney, that he had no criticisms of Ms. Pew, that she had investigated this matter to his complete satisfaction, and that he believed he had been fully advised by her as to all aspects of his case, including his legal rights and the possible consequences of his plea. Movant stated that be [sic] believed his attorney

    had adequately, completely, and effectively represented him in his defense to this matter.  (pl. tr. pg. 10-11)

7. Movant fully explained to the Court that he understood he had a right to proceed to trial if he did not plead guilty.  Movant also answered the Court's questions pertaining to Movant's rights at trial, including the right to confront witnesses and the fact the state must prove its case beyond a reasonable doubt.  Movant also indicated he had a right to testify or not to testify and that all twelve, impartial jurors would have to agree to find Movant guilty or find him not guilty.  Finally, Movant indicated he would have the right to present evidence at trial and call witnesses, if necessary.  (pl. tr. pgs. 11-12.)

8. At sentencing, Movant stated that he had ample opportunity to discuss his case with his attorney, that Ms. Pew did what was asked of her prior to entering his plea of guilty, that he was completely satisfied with the services rendered to him by his attorney regardless of the outcome of his case, and that she had done a "good" job for him.  (sentencing transcript pgs. 26-28 hereinafter referred to as sn. tr.)

9. At the time of both his plea and sentencing, Movant appeared lucid, expressed himself clearly, and seemed to fully comprehend the situation and the questions asked of him.  As a result, Movant is denied post-conviction relief as to this point.

(Respondent's Exh. 1, PP. 89-91).  Petitioner advanced the claim on appeal of the denial of his Rule 24.035 motion, and the Missouri Court of Appeals denied the claim as follows:

   In his first point on appeal, Movant claims his guilty plea was involuntary, unknowing, and unintelligent because he was not competent to proceed.  Movant argues that he was not competent to proceed because his functioning IQ was too low and rendered him unable to understand the proceedings against him and sufficiently consult with his lawyer with a reasonable degree of rational understanding.  Movant's claim is refuted by the record.

   Section 552.020.1 RSMo 2000[4] provides that "[n]o person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures."  A trial court's ruling concerning the competency of a defendant is a factual determination which must be upheld unless there is no substantial evidence to support it.  *State v. McCurry-Bey*, 298 S.W.3d 898, 901 (Mo. App. E.D. 2009).

---

[4] All further statutory references are to RSMo 2000.

- 4 -

Here, it is undisputed that Movant's IQ scores placed him in the low range of intellectual functioning, consistent with the mental disease or defect of mild mental retardation. Although IQ scores are a factor for the trial court to consider in determining a defendant's competency, they are not conclusive. *State v. Johns*, 34 S.W.3d 93, 105 (Mo. banc 2000); *see also Pulliam v. State*, 480 S.W.2d 896, 904 (Mo. 1972) (finding that the fact "that an accused may be mentally retarded in some degree does not automatically render him incapable of standing trial or entering a voluntary plea of guilty"). If the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him", the defendant is competent to proceed. *Johns,* 34 S.W.3d at 104 (internal quotation omitted).

After Movant was charged with statutory rape, Movant was examined by Dr. Michael T. Armour who opined that Movant's intellectual limitations "significantly impair his ability to process information about the court proceedings" and "[h]is ability to assist his attorney in his defense." Based on Dr. Armour's report, plea counsel filed a motion for Movant to be found not competent to proceed. The plea court ordered an examination of Movant by Dr. Richard Scott to determine whether Movant lacked the capacity to understand the proceedings against him or to assist in his defense. Based on Dr. Scott's findings,[5] the plea court found that Movant was not mentally fit to proceed and suspended the criminal proceedings. Less than a year later,[6] Movant was examined by Dr. Jeffrey Kline who found that, although Movant suffered from mild mental retardation, Movant had "the capacity to understand the proceedings against him and [was] able to assist his attorney in his own defense." Specifically, Dr. Kline's report indicated that Movant understood: (1) the allegations against him; (2) that the defense attorney was on his side; (2) [sic] that the prosecuting attorney was against him; (3) that both attorneys would have the opportunity to present witnesses and evidence; (4) that the judge would hear his case and decide any sentence; (5) that the jury would determine whether he was guilty; (6) the concept of a plea bargain; (7) basic trial procedures and the adversarial nature of the process; (8) the evidence in the case; and (9) how that evidence could be used. Based on Dr. Kline's report, the plea court determined that Movant was competent to proceed. Thereafter, Movant entered a plea of guilty.

At the plea hearing, Movant indicated: (1) that he had fully discussed his case with plea counsel; (2) that he understood his right to a jury trial with twelve impartial jurors where he would have the right to introduce evidence, the right to confront

---

[5] Dr. Scott's report regarding Movant's competency to proceed is not included in the record on appeal.

[6] Section 552.020.1 only bars criminal proceedings against a person deemed incompetent "so long as the incapacity endures." Pursuant to section 552.020.11(1), six months after a person is committed for being incompetent, "the court which ordered the accused committed shall order an examination ... to ascertain whether the accused is mentally fit to proceed ...."

- 5 -

witnesses, and would be presumed innocent until the State met its burden of proof beyond a reasonable doubt; (3) that plea counsel fully investigated the matter and advised him of all aspects of his case; (4) that no threats or promises were made that induced his guilty plea; and (5) that he was pleading guilty voluntarily and of his own free will because he was guilty of the offense.  Moreover, the motion court, which was also the plea and sentencing courts, noted that at the time of Movant's plea and sentencing "Movant appeared lucid, expressed himself clearly, and seemed to fully comprehend the situation and the questions asked of him."  "Although a movant's demeanor may not be dispositive of his competency, it is within the court's discretion to consider that demeanor when determining competence and give it the weight it deems appropriate."  *Azbell v. State*, 144 S.W.3d 863, 872 (Mo. App. S.D. 2004).

Based on the foregoing, Movant's claim that his guilty plea was involuntary, unknowing, and unintelligent because he lacked sufficient capacity to consult with his attorney or understand the proceedings against him is refuted by the record. Accordingly, the motion court did not clearly err in denying Movant's claim for post-conviction relief without an evidentiary hearing.  Point one is denied.

(Respondent's Exh. 6, PP. 3-5).

With respect to federal court review of state court conclusions, 28 U.S.C. §2254 states in pertinent part as follows:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).

Under federal law, in order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Counsel is "strongly presumed to have rendered adequate assistance and

made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* In the context of a guilty plea, to demonstrate prejudice the Petitioner must show that, but for counsel's error, he would not have pled guilty, but would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Upon consideration the Court finds that with this claim, Petitioner fails to satisfy either prong of the *Strickland* test. With respect to deficient performance, the Court notes that upon his arrest Petitioner was examined by a licensed psychologist, who opined that his intellectual limitations "significantly impair[ed] his ability to process information about court proceedings" and "[h]is ability to assist his attorney in his defense." (Respondent's Exh. 1, Supplemental Legal File, P. 18). Based on this report, plea counsel filed a motion for Petitioner to be found not competent to proceed, which eventually was granted by the plea court. (Id., PP. 13, 24-25). Under these circumstances, the Court cannot find plea counsel's performance fell outside the wide range of professionally competent assistance sanctioned by *Strickland*. *Id.* at 690.

With respect to prejudice, the Court notes that Petitioner subsequently was examined by another psychologist, who concluded that although Petitioner suffered from mild mental retardation, he had "the capacity to understand the proceedings against him and [was] able to assist his attorney in his own defense." (Respondent's Exh. 1, Second Supplemental Legal File, P. 7). Based on this

later report, the plea court determined that Petitioner was competent to proceed. Petitioner then proceeded to plead guilty, and assured the plea court in a clear and lucid manner that he understood the allegations against him and the rights he was relinquishing by pleading guilty, and that he was pleading guilty voluntarily and of his own free will because he was in fact guilty of the offense. Petitioner presents no evidence here that in the absence of his counsel's alleged error he would not have pled guilty, but would have insisted on going to trial. *See Hill*, 474 U.S. at 59. Petitioner's first claim for relief must therefore be denied.

## II.     Ground 2

As stated above, in Ground 2 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel failed properly to investigate the defense of not guilty by reason of mental disease or defect ("NGRI"), or diminished capacity. (§2254 Petition, PP. 6-9). Petitioner raised this claim before the 24.035 post-conviction motion court, and the court denied the claim as follows:

> 10.     Pertaining to Movant's second point in his Amended Motion, Movant claims that plea counsel was ineffective in failing to properly investigate the defense of not guilty by reason of mental disease or defect, ("NGRI"), or diminished capacity. Movant claims that counsel was ineffective in failing to investigate this defense, explain it to Movant, and present evidence to support the defense to a jury.
>
> 11.     At both the time of plea and at sentencing, Movant stated he was completely satisfied with the services of his attorney. (pl. tr. pgs. 10-12, & sn. tr. pgs. 27-28.) Dr. Scott, as previously mentioned, opined that Movant was able to appreciate the nature, quality, and wrongfulness of his conduct.
>
> 12.     To prove ineffective assistance, a Movant must show that counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney, and that the defendant was thereby prejudiced. Strickland, supra, at 687-688. To prove prejudice, the defendant must show a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." State v. Shurn, 866 S.W.2d 447, 468 (Mo. banc 1993), cert. denied, 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

- 8 -

13. Trial strategy is not a ground for ineffective assistance of counsel. <u>Shurn</u>, supra, at 468. Generally, the investigation of defenses and selection of witnesses are questions of trial strategy and virtually unchallengeable. <u>Leisure v. State</u>, 828 S.W.2d 872, 875 (Mo. banc), cert. denied, 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." <u>Strickland</u>, supra, at 691. "[T]he defendant must overcome the presumption that, under the circumstances, that challenged action might be considered sound trial strategy." <u>Id.</u> at 689, 104 S.Ct. at 2065; <u>Sanders v. State</u>, 738 S.W.2d 856, 857 (Mo. banc 1987) (noting that defendant's burden to overcome the presumption of effectiveness is heavy).

14. The record refutes Movant's claim that his counsel failed to investigate a defense of not guilty by reason of mental disease or defect, ("NGRI") or diminished capacity. Movant has failed to establish that his counsel's representation "fell below an objective standard of reasonableness." <u>Deck</u>, supra, at 425-26. As a result, Movant is not entitled to post-conviction relief as to this point.

(Resp. Exh. 1, PP. 91-92). Petitioner advanced the claim on appeal of the denial of his Rule 24.035 motion, and the Missouri Court of Appeals denied the claim as follows:

In Movant's second and third points on appeal, he claims that the motion court clearly erred in denying his motion for post-conviction relief without an evidentiary hearing because he was denied effective assistance of counsel.

Generally, in order to establish a claim of ineffective assistance of counsel, a movant must show that counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney, and as a result the movant was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Skillicorn v. State*, 22 S.W.3d 678, 681 (Mo. banc 2000). However, "[b]y pleading guilty, [M]ovant waived all errors except those which affect the voluntariness of the pleas or the understanding with which the pleas were given. Any claim of ineffective assistance of counsel is immaterial except to the extent it impinged upon the voluntariness and knowledge with which the plea of guilty was made." *Jenkins v. State*, 788 S.W.2d 536, 537 (Mo. App. S.D. 1990)....

In his second point on appeal, Movant claims that plea counsel was ineffective for failing to properly investigate the defenses of not guilty by reason of mental disease or defect ("NGRI") and diminished capacity. Movant contends that plea counsel's failure to properly investigate the defenses rendered his guilty plea involuntary, unknowing, and unintelligent because he would not have entered a plea of guilty had counsel informed him of the availability of the defenses. Movant's claim is refuted by the record.

The defense of NGRI is codified under section 552.030. *State v. Miller*, 220 S.W.3d 862, 867 n.5 (Mo. App. W.D. 2007). Section 552.030.1 provides that "[a] person is not responsible for criminal conduct if, at the time of such conduct, as a result of mental disease or defect such person was incapable of knowing and appreciating the nature, quality, or wrongfulness of such person's conduct."

After Movant was determined competent to proceed, plea counsel filed notice with the trial court that Movant intended to rely on the defense of NGRI. Upon motion from Movant, the trial court issued an order directing Dr. Richard Scott to examine Movant pursuant to section 552.030.3[7] for an opinion as to whether at the time of the alleged criminal conduct, Movant, as a result of mental disease or defect, was incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct. In his report, Dr. Scott concluded:

> Although [Movant] is mentally retarded, functionally illiterate and very limited in many ways, he had demonstrated an understanding of sexual contact, the wrongfulness of sexual contact with children, specific understanding of the allegations against him, and the wrongfulness of the alleged behavior. Therefore, in the opinion of the examiner, to a reasonable degree of psychological certainty, although the defendant suffered a mental defect at the time of the alleged offense, he was not, as a result of this mental defect, incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct.

Despite plea counsel's filing of the notice to rely on the defense of NGRI and Dr. Scott's subsequent findings, Movant alleges that plea counsel was ineffective for failing to investigate the defenses available to Movant. Movant contends that had he been properly evaluated by another doctor, there is a reasonable probability that the evaluation would have proved he was incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct. However, "trial counsel [can] rely on a pretrial psychiatric evaluation regarding an accused's mental state at the time of the crime in order to determine whether to use the insanity defense." *Putney v. State*, 785 S.W.2d 562, 562-63 (Mo. App. E.D. 1990) (rejecting a movant's claim that counsel was ineffective for failing to procure an additional examination under section 552.030.3 before advising the movant whether to plead guilty). Accordingly, plea counsel cannot be ineffective for failing to obtain a second examination of Movant. *See Goodwin v. State*, 191 S.W.3d 20, 31 n.6 (Mo. banc 2006) ("[c]ounsel is not ineffective for failing to get a second psychiatric examination when the first examination did not find defendant to be suffering from a mental disease or defect") (internal quotation omitted).

Moreover, Dr. Kline's examination of Movant revealed that Movant had an

---

[7] Section 552.030.3 provides that the trial court shall appoint a psychiatrist or psychologist to examine a defendant who claims the defense of NGRI.

- 10 -

> understanding, although limited, of the defense of NGRI. During the plea hearing, Movant indicated that he had ample opportunity to discuss his case with plea counsel and that plea counsel investigated the matter to his complete satisfaction. Movant also informed the plea court that he had been fully advised by plea counsel as to his legal rights, that plea counsel had adequately, completely, and effectively represented him in his defense, and that he was voluntarily pleading guilty because he was guilty of the offense.
>
> The record demonstrates that plea counsel adequately investigated the availability of the defense of NGRI and that Movant voluntarily, knowingly, and intelligently entered a plea of guilty.[8] Accordingly, Movant's claim is refuted by the record, and the trial court did not clearly err in denying Movant's claim for post-conviction relief without an evidentiary hearing. Point two is denied.

(Respondent's Exh. 6, PP. 5-8).

Upon consideration the Court finds that with this claim, Petitioner fails to demonstrate deficient performance. Specifically, the Court notes that Petitioner's claim his attorney failed to investigate the defense of not guilty by reason of mental disease or defect is refuted by the record, as plea counsel both investigated the defense, and filed notice with the trial court that Petitioner intended to rely on said defense at trial. Under these circumstances, counsel's performance fell within the wide range of professionally competent assistance sanctioned by *Strickland*, and so Ground 2 of Petitioner's petition must be denied.[9]

---

[8] Unlike the defense of NGRI, the defense of diminished capacity contemplates full responsibility, but only for a lesser crime. *State v. Lowe,* 318 S.W.3d 812, 819 (Mo. App. W.D. 2010). The defense of diminished capacity involves the presentation of evidence to negate the culpable mental state that is an essential element of the crime. *Id.; see* section 552.015.2(8). The defense is not applicable to strict liability offenses which do not require a culpable mental state. *Van Ralston v. State,* 824 S.W.2d 75, 79 n.3 (Mo. App. E.D. 1991). Statutory rape is a strict liability offense that does not require proof of a culpable mental state. *State v. Stokely,* 842 S.W.2d 77, 81 (Mo. banc 1992). Accordingly, the defense of diminished capacity is not available as a defense to the charge of statutory rape, and plea counsel could not be ineffective for failing to investigate the defense.

[9] In light of the Court's finding regarding deficient performance, it need not consider whether Petitioner established prejudice. The Court notes, however, that the fact that a licensed psychologist determined Petitioner was not, as a result of any mental defect, incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct, undermines his ability to establish

## III.     Ground 3

As stated above, in Ground 3 of his petition Petitioner asserts he received ineffective assistance of counsel, in that trial counsel coerced Petitioner into entering an involuntary, unknowing, and unintelligent plea by convincing him he would lose at trial because his taped statement to the police would be introduced to the jury. (§2254 Petition, PP. 6, 9-10). Petitioner raised this claim before the 24.035 post-conviction motion court, and the court denied the claim as follows:

> 15.    In Movant's third point, Movant claims his plea of guilty was not voluntary, knowing and intelligent, because Movant was coerced into entering a plea of guilty by the fear that he would lose at trial because his taped statement to police would be introduced to the jury.
>
> 16.    However, Movant stated that his plea was made voluntarily and free from threat, promise, coercion, or inducement. (pl. tr. pgs. 10 & 13) At his sentencing, Movant reiterated that his plea of guilty was free of any type of threat, promise or coercion. (sn. tr. pg. 27) Movant was aware that his Motion to Suppress Statement had been denied and that such evidence may be used against him at trial. Mere apprehension that legitimate evidence may be used against Movant at trial does not rise to the level of a "coerced" plea of guilty. As a result, Movant is denied post-conviction relief as to this point.

(Resp. Exh. 1, PP. 92-93). Petitioner advanced the claim on appeal of the denial of his Rule 24.035 motion, and the Missouri Court of Appeals denied the claim as follows:

> In his third point on appeal, Movant claims that plea counsel was ineffective for failing to inform Movant that the trial court's denial of Movant's motion to suppress was an appealable issue and that a plea of guilty would waive Movant's right to challenge the ruling. Movant alleges that counsel's ineffectiveness rendered his guilty plea involuntary, unknowing, and unintelligent because, at the time he entered his plea, he was unaware of his right to appeal the trial court's denial of his motion to suppress and that a guilty plea would waive his right. Movant's claim is refuted by the record.
>
> At the plea hearing, Movant indicated that there were no threats or promises made to induce him to plead guilty and that Movant was pleading guilty voluntarily

---

prejudice.

> because he was guilty of the offense. Movant also informed the plea court that he had been fully advised by plea counsel as to all aspects of his case, including his legal rights and the possible consequences of his plea. More importantly, Movant indicated to the plea court an understanding of his right to appeal his case to the Missouri Court of Appeals if he did not like the outcome and his understanding that a plea of guilty would waive his right to appeal.
>
> The record demonstrates that Movant was fully advised regarding his right to appeal and that Movant voluntarily, knowingly, and intelligently entered a plea of guilty. Accordingly, Movant's claim is refuted by the record, and the motion court did not clearly err in denying Movant's claim for post-conviction relief without an evidentiary hearing. Point three is denied.

(Respondent's Exh. 6, PP. 8-9).

Upon consideration, this Court holds the finding of the state courts is fairly supported by the record, and thus is presumed to be correct. In other words, with respect to Petitioner's claim he was threatened into pleading guilty by his plea counsel, a review of the record shows the decision to enter a guilty plea was a choice made by Petitioner on the advice of his plea counsel, and that Petitioner was in full agreement with that decision. (Respondent's Exh. 1, PP. 25-26, 33-34, 36). In addition, when directly asked if "anyone made any promises or threats to [Petitioner] or [his] family to induce [him] to plead guilty," Petitioner answered "No." (Id., P. 33).

The Eighth Circuit has held that, "'[s]olemn declarations in open court carry a strong presumption of verity.'" *Smith v. Lockhart*, 921 F.2d 154, 157 (8th Cir. 1990), quoting *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). In light of the statements made by Petitioner at the plea hearing, the state courts were reasonable in finding that Petitioner voluntarily pled guilty, and further received effective assistance of counsel. *Smith*, 921 F.2d at 157. Ground 3 of the instant petition must therefore be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of

Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice.  A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability.  See *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

Dated this 6th day of August, 2013.

/s/Jean C. Hamilton  
UNITED STATES DISTRICT JUDGE